IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| **THOMAS A. KUZNICKI,** | : | |
| | : | **Bankruptcy No. 11-20563-BM** |
| | : | |
| Debtor | : | |
| **THOMAS A. KUZNICKI,** | : | |
| Plaintiff, | : | **Chapter 7** |
| | : | |
| v. | : | |
| | : | **Adversary No. 11-02076-BM** |
| **EDUCATIONAL CREDIT** | : | |
| **MANAGEMENT CORPORATION**, | : | |
| Defendant. | : | |

Appearances:   John P. Neblett, Esq. For Educational Credit Management Corporation.

## **MEMORANDUM OPINION**

Before the court is Thomas A. Kuznicki seeking a determination that $44,331.59 of nondischargeable educational loans are dischargeable pursuant to the undue hardship exception provided for in 11 U.S.C. §523 (a)(8)(B). Mr. Kuznicki asserts that the elements of the *Brunner* standard for undue hardship has been met and as such, the educational loans should be discharged under 11 U.S.C. §523 (a)(8)(B).

We hold that the requirements of the narrow exception of dischargeability of educational loans due to undue hardship have not been met and that the loans shall not be discharged.

### **- FACTS -**

Debtor currently lives alone and does not have any dependents. He graduated from

Churchill Area High School in 1972. Following graduation, Debtor completed some schooling at the Community College of Allegheny County (CCAC) and the University of Pittsburgh, for which he paid cash.  Debtor worked as a heavy construction carpenter and was a member of the union until 2000 when he suffered a herniated disc. In May 2001, he sustained further injury when he fell through a scaffold.  The physical aspects of the construction industry had become too much so he decided to go back to school. In 2002, he enrolled in classes at CCAC and paid in cash for the first semester of credits. In Spring of 2004, he enrolled in classes at the University of Pittsburgh and left in the spring of 2007 without graduating.  He was thirty credits short of completing a degree in civil engineering.

Debtor asserts that he has been unable to work for the last ten years. He claims to have severe medical issues, both physical and mental, that prevent him from working. He stated that pain prevents him from standing, sitting, or walking for any period of time. Kuznicki Dep.29:14, Aug.23, 2011.  He has had one surgery and that was for the herniated disc. The Debtor last saw a physical therapist five or six years ago and last saw a family doctor roughly two years ago. Kuznicki Dep. 35:2-12, Aug.23, 2011. Also, he is not taking medications to help with the pain.  Instead, he has turned to self-medication with alcohol. Kuznicki Dep. 38:18-21, Aug.23, 2011.

Debtor's days involve a limited range of activities because of his pain.  He begins by having something for breakfast. He then spends about an hour reading the newspaper and he uses his computer, listens to the news, and catches up on sports. Kuznicki Dep. 36:17-21, Aug.23, 2011.

Debtor claims to suffer mentally as well. He asserts that he has trouble

concentrating and that he has a chronic major depressive disorder, as well as a general anxiety disorder. Despite these disorders, he is not currently seeing a doctor, nor is he taking medications for such disorders. Kuznicki Dep. 38:18-21; 40:16-19, Aug.23, 2011.

In his schedule of current expenses of his bankruptcy petition filed on February 2, 2011, Debtor included the following monthly expenses: Rent, $475; Utilities, $120; Telephone, $55; Home maintenance, $20; Food, $350; Clothing, $75; Laundry and dry cleaning, $20; Over the counter medications, $20; Transportation, $140; Recreation including magazines and newspapers, $75; Renter's insurance, $15; Automobile insurance, $80; Automobile payment, $135; Carpenter's dues, $17; Internet and security, $50; and Stationery supplies, $30. Debtor also included co-pays and medications in his expense schedule. However, in his deposition, Debtor stated that he has not been to his primary care doctor in over two years and that he has instead chosen to self-medicate. Therefore, this is not a current expense of the Debtor. Also in his deposition, Debtor noted that his rent has increased to $500 per month. Kuznicki Dep. 44:124-25, Aug.23, 2011. He also stated that he only has six months left to pay on his automobile, and thus, after six months, will no longer have the $135 monthly car payment. Kuznicki Dep.pg 49: 8-12, Aug.23, 2011. So, Debtor's total monthly expenses are roughly $1,567.[1] Debtor currently receives a net of social security disability benefits of $1,000 per month. He also receives Carpenter's disability benefits of $700 per month. Debtor 's total monthly income is $1,700 per month.

---

[1] Debtor noted that he has not paid Carpenter dues "in a while". Kuznicki Dep. Aug.23, 2011, pg 18, ¶ 11-16.

## - Discussion -

The government has established an educational loan program that attempts to provide educational opportunities to as many students as possible. The entire system is designed so that those students borrowing money today will pay back the borrowed funds to permit future students to have access to such funds. Congress enacted 11 U.S.C. §523 (a)(8)(B) ultimately to protect this system. 11 U.S.C. §523 (a)(8)(B) prohibits discharge of certain educational loans except in cases where prohibiting the discharge would impose "undue hardship" on the debtor. The enactment of this section was an attempt to satisfy the twin goals of rescuing the student loan program and preventing abuse of the bankruptcy process by undeserving debtors. *In re Faish*, 72 F.3d 298, 302 (3d.Cir.1995) (citing *In re Pelkowski*, 990 F.2d 737, 739 (3d.Cir.1993). As such, in an attempt to conform with legislative intent, courts have interpreted the "undue hardship" exception quite narrowly. In *Brunner*, the Second Circuit established a three-part standard for "undue hardship". *In re Brunner*, 831 F.2d 395, 396(2d Cir.1987). In *Faish*, the Third Circuit adopted the test put forth in *Brunner* for determining when the "undue hardship" exception has been satisfied and when the educational loans should be discharged. *In re Faish*, 72 F.3d at 306. (We therefore hold that the *Brunner* "undue hardship" test must now be applied by bankruptcy courts within the Third Circuit.").

The *Brunner* test for undue hardship involves three prongs that must each be satisfied by the debtor in order to prove "undue hardship" for purposes of the exception. The debtor bears the burden of proof with regard to each prong of the test by a preponderance of the evidence. *In re Flickinger-Luther,* 2012 WL 11247 (Bkrtcy.W.D.Pa.) (Citing *Brightful v. Pa. Higher Educ.Assistance Agency (In re*

- 4-

*Brightful)*, 267 F.3d 324. 327 (3d.Cir.2001). The three prongs of the *Brunner* test are as follows:

> 1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period for student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Faish*, 72 F.3d at 302.

As noted above, the debtor has the burden to prove each prong of the *Brunner* test by a preponderance of the evidence. To satisfy the first prong, the Debtor must show that based on the Debtor's current income and expenses, he would not be able to maintain a "minimal" standard of living for himself and his dependents if forced to repay the loans. The issue becomes what is considered a "minimal" standard of living for purposes of the test.

A minimal standard of living requires more than a showing of tight finances. *In re Armstrong*, 394 B.R.43, 52 (Bkrtcy. M.D.Pa. 2008) (citing *Faish*, 72 F.3d at 306.). The "minimal" standard of living does not require the debtor to live in a state of poverty. *In re Flickinger-Luther*, 2012 WL 11247, *2. (*citing Alston v. United States Dep't of Educ. (In re Alston),* 297 B.R. 410, 415 (Bankr.E.D.Pa.2003)). The upper limits of the standard permit the debtor to purchase basic necessities such as food, clothing, housing, and medical treatment. However, it does not allow for "luxury-type expenses". *In re Crawley,* 460 B.R.421 (Bkrtcy.E.D.Pa.,2011). Once the debtor has provided for his basic necessities, excess financial resources should be used to satisfy student loan debt in lieu of discretionary expenditures. *Id.* (quoting *In re Johnson*, 400 B.R. 167, 173

(Bankr.M.D.Pa.2009). We agree with other courts that "basic needs" include more than just those necessities stated above. A minimal standard of living includes transportation expenses, food and hygiene expenses, as well as modest recreation expenses. *Id.* Also, the first prong will not be deemed satisfied if proof that a little "belt-tightening" on the debtor's part would have resulted in an ability to repay the loans. *In re Flickinger-Luther*, 2012 WL 11247, *2.

The Debtor currently receives $1,700 per month in benefits. He does not have any dependents. He reported in his bankruptcy petition that his current expenses are roughly equivalent to that amount. However, in reality, his current expenses are approximately $1,562. The Debtor included as part of his monthly expenses $40 for a co-pay for specialist, $70 for medications, $20 for dental, and $20 for primary care. However, at his deposition, the Debtor reported that he has not been to a primary care doctor in over two years and is currently not taking any medications. He also noted that he has not been to a physical therapist in over "five or six years". Kuznicki Dep. 35: 2-12, Aug.23, 2011. Therefore, the Debtor technically has $150 of excess monthly income after his basic necessities have been covered.

The Debtor's basic necessities have been satisfied. We also believe that some belt-tightening on the Debtor's part would have allowed him the resources to meet at least the minimal payments on his student loans. So, even if the Debtor had elected to visit the doctor or had prescription medications, he would have had resources to make the minimal payment on his loans. "Belt-tightening" does not require the debtor to live in a state of poverty. It merely requires some trimming of the Debtor's budget. For instance, the Debtor has asserted that he spends $ 140 per month on transportation

expenses. However, the Debtor does not have a job nor does he go to the doctor. He also does not have dependents who require his care. Therefore, $140 for transportation seems excessive. Also, the Debtor claims that his monthly budget includes carpenter dues of $17, yet in his deposition, he stated that he has not paid his dues in a while. Kuznicki Dep.18:11-16, Aug.23, 2011. Therefore, this is no longer a current monthly expense. Also, given the fact that the Debtor pays for internet, it seems that $75 for recreation, clubs and entertainment, newspapers, and magazines is excessive. Most of the content of such subscriptions can be found on the internet, and as such, this amount could be trimmed in order to satisfy educational loan obligations instead.

The Defendant offers an array of payment plans designed to fit the needs of individuals in differing circumstances. It offers an income-based payment plan. Had the Debtor chosen this particular plan, his initial monthly payments would have been $50.51.

The other prongs of the *Brunner* test should not be examined if the first prong has not been satisfied. *In re Faish,* 72 F.3d. at 305. All three prongs must be satisfied in order for the exception to apply. While we have determined that the Debtor failed to meet his burden with regard to the first prong of the *Brunner* test, we also believe that the Debtor would neither be able to meet the second prong nor the third prong of the test.

The second prong of the *Brunner* test requires the debtor to prove by a preponderance of the evidence that he will be unable to maintain a minimal standard of living given the additional circumstances that will continue to exist throughout the loan repayment period. The standard for this prong has been deemed quite high. *In re*

*Brightful*, 267 F.3d at 328. It is not enough to prove current financial difficulties, rather the debtor must prove "a total incapacity...in the future to pay [her] debts for reasons not within [her] control." *Id.* (quoting *In re Brunner*, 46 B.R. 752, 758 (S.D.N.Y.1981). The "undue hardship" exception is to be evoked only in exceptional cases. *Id.* Emotional and psychiatric problems can be deemed exceptional if it can be proven that such conditions prevent the individual from being gainfully employed. *Id.* However, the Debtor in the case at bench merely stated that he has mental disorders, including depression, and that he has trouble concentrating and thus, is not able to have a job. The Debtor has failed to prove how these problems prevent him from working. We understand that expert testimony is not required to prove such; however, at the least, we would think that testimony contradicting such statements is telling. While the Debtor claims that he is unable to focus and/or concentrate, he has testified that he has a daily routine of reading the newspaper and catching up on the news and sports. Kuznicki Dep. 36:17-21, Aug.23, 2011. While we do not mean to diminish the severity of the Debtor's alleged mental issues, there is simply no evidence regarding the severity of the problem. If anything, the evidence establishes otherwise. We also think that it is relevant to consider the fact the Debtor will have an extra $135 per month once he completes the payments on his car, six of which remained at the time of the deposition. The Debtor has failed to sustain his burden with regard to the second prong of the *Brunner* test.

The third prong of the *Brunner* test requires that the Debtor show that he has made good faith efforts to repay his loan. The Debtor certainly did not meet his burden with respect to this element. The Third Circuit has traditionally looked to two considerations to determine the satisfaction of this prong. Courts have considered whether the Debtor

incurred substantial expenses beyond those of basic necessities and whether the Debtor made efforts to restructure his loan before filing his petition in bankruptcy. *In re Flickinger,* 2012 WL 11247, *5 (citing *Pelliccia v. United States Dep't of Educ., 67 Fed.Appx.* 88, 90-91 (3d.Cir.2003). With respect to the consideration of substantial expenses, the Debtor failed to demonstrate such was the case. In fact, the Debtor's bankruptcy petition schedule I shows that his monthly expenditures were roughly equivalent to his income. After reviewing the Debtor's schedules with his deposition in mind, we discovered that he had excess income. The Debtor stated in his deposition that he has not paid carpenter dues in while. Kuznicki Dep. 18:11-16, Aug.23, 2011. He also stated that he has not visited the doctor in over two years nor is he on any medication. Thus, he did in fact have excess income which could have been used to meet the minimum payment under the lowest payment plan, that being $50.51 per month for the income-based plan. However, the Debtor did not do so. Therefore, not only did the Debtor fail to meet his burden with respect to the first and second prongs of the *Brunner* test, but he also failed to meet his burden with respect to the third prong.

While this court is one of equity, the *Brunner* test explicitly excludes considerations of extraneous factors and equitable considerations. *In re Faish*, 72 F.3d at 306. The "undue hardship" exception provided for by Congress is a narrow exception and is only to be granted in the exceptional case to the deserving and honest debtor. While it is unfortunate that the Debtor will have to avoid luxury expenses and tightly manage his finances, it is necessary to preserve the system. We hold that the Debtor has failed to meet the requirements for the "undue hardship" exception provided for in 11 U.S.C. §523 (a)(8)(B) and as such Debtor's request for a determination of discharge of his

educational loans is denied.  An appropriate order will be entered.


February 21, 2012                          /s/
Dated                                      Bernard Markovitz
                                           U.S. Bankruptcy Judge